AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
7/21/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
07/21/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____KL_____ DEPUTY

United States of America

v.

MARGARET SARAH ORTIZ,

Defendant.

Case No.   2:25-MJ-04506-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about July 19, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assault of a Federal Officer |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

/s/ Timothy Rivero
Complainant's signature

Timothy Rivero, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 21, 2025

*[signature]*
Judge's signature

City and state: Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA: Yervant P. Hagopian x0732

**AFFIDAVIT**

I, Timothy Rivero, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Senior Special Agent with the Department of Homeland Security – Federal Protective Services ("FPS") and have been so employed since October 2003. As a Special Agent, my official duties are to investigate crimes against the United States including its properties and employees. Specifically, I investigate assault and threats on government officials, theft and depredation of government property, impersonation of government officials, arson, prohibited firearm possession on government property, and narcotic-related offenses. Since 2003, I have conducted numerous criminal investigations including assaults and threats on government officials, and depredation of government property. From 1997 to July 2003, I was a uniformed law enforcement officer with FPS. In that position, I conducted all matters related to law enforcement including investigating assaults on federal officials and contractors.

2. At the Federal Law Enforcement Training Center ("Academy") in Glynco, Georgia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, arrest warrant affidavits, criminal complaints, and probable cause. The Academy covered all aspects of federal investigations, including but not limited to drug investigations, identification of controlled substances,

physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, physical surveillance, constitutional rights, the execution of search warrants, and working with confidential sources.

## II. PURPOSE OF AFFIDAVIT

3.   This affidavit is made in support of a criminal complaint and arrest warrant against Margaret Sarah ORTIZ ("ORTIZ") for violating 18 U.S.C. § 111(a)(1), Assault of a Federal Officer.

4.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. STATEMENT OF PROBABLE CAUSE

5.   Based on my review of video footage captured by surveillance cameras near the entrance to the Roybal Federal Building located at 500 North Alameda Street in Los Angeles, California (the "Alameda Street Entrance"), I know the following:

a. At approximately 7:45 p.m. on July 19, 2025, a car belonging to the Army National Guard (the "ANG Car") exited from the Alameda Street Entrance toward Alameda Street, where ORTIZ and a group of approximately 12-15 others had gathered to impede the car's forward movement.[1]

b. To assist the ANG Car's orderly departure onto Alameda Street, a group of approximately five uniformed FPS officers, including Area Commander L.D. ("AC L.D."), escorted the car from the Alameda Street Entrance to Alameda Street. As the FPS officers approached Alameda Street, they walked into the crowd to create a path for the ANG Car.

c. As the ANG Car approached Alameda Street, AC L.D. walked approximately 12 feet onto Alameda Street, thereby creating approximately 12 feet between himself and the next FPS officer behind him. ORTIZ walked onto Alameda Street, approached AC L.D., and began waving a black flag within AC L.D.'s immediate vicinity. Based on my review of video surveillance footage from the Alameda Street Entrance and conversations with AC L.D. and a separate FPS Inspector who helped detain ORTIZ, ORTIZ lifted the black flag and waved it in a whipping motion toward AC L.D.'s face, which caused the flag to contact AC L.D.'s eyes, nose, and chin.

d. At approximately 8:02 p.m. on the same date, I spoke to AC L.D. regarding the incident. AC L.D. said, "We were

---

[1] It appears that the group of bystanders congregated near the Alameda Street Entrance to protest recent federal immigration enforcement actions in the Los Angeles area.

3

escorting a National Guard vehicle from the apron[2], when I noticed this woman waving a black flag yelling and walking towards the vehicle exit on Alameda.  As I moved onto Alameda Street to ensure the vehicle could depart without being stopped by the protesters, the woman began waving the black flag directly at me, while yelling at me.  I continued to walk onto Alameda Street, wherein she followed next to me and then moved in front of me, in a manner to stop me.  The woman continued to yell and became more agitated that she wasn't getting a reaction from me.  She then escalated her rhetoric when she whipped the flag up to my face when it hit my chin, nose and eyes.  She continued to whip the flag one more time towards me, and I wasn't going to allow myself to be assaulted a second time.  I immediately detained her and a [K9 officer] assisted me.  While walking back to the apron and garage area she stated that she was sorry and that she didn't mean to assault me."

   e. At approximately 8:37 p.m. on the same date, I interviewed ORITZ.  I asked ORTIZ to verify her full name, address and date of birth, which she confirmed.  I provided ORTIZ the Miranda warning; she understood and waived her rights and chose to speak to me.  ORTIZ said, "I don't believe that I assaulted him."  ORTIZ continued to deny hitting AC L.D. with the flag and added that "hitting someone is with your fists."  I asked ORTIZ if she touched AC L.D. with the flag; ORTIZ

---

[2] Based on my training and experience, the "apron" referenced here is the federal property that is located between the parking garage of the Roybal Federal Building and the public sidewalk that abuts Alameda Street.

acknowledged and confirmed that she did.  I repeated the question and ORTIZ affirmed that she touched AC L.D. with the flag.

### IV. CONCLUSION

6.   For all the reasons described above, there is probable cause to believe ORTIZ committed an assault on a federal officer in violation of 18 U.S.C. § 111(a)(1).


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 21st day of
July, 2025.

_____
HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

5